Case number 23-1834, Carla Campbell Jackson v. State Farm Insurance, argument not to exceed 15 minutes per side. Mr. McLaughlin, you may proceed for the appellant. Thank you. Good morning, your honors. As a preliminary matter, I have reserved three minutes for rebuttal. Thank you. We're here today on Dr. Carla Campbell Jackson's appeal, and there are primarily three issues at stake. One is whether the district court erred when it confined her claim to one act, and that was her reporting discrimination, retaliation, race-based related to receiving a letter on April 25, 2016. Two, whether then on summary judgment after the district court had already confined this case to one single event and one time frame being April 25, 2016 to the date of her termination merely 13 days later, whether on summary judgment the district court erred in its analysis of her retaliation claim that she did not, according to the district court, raise any plausible inference that there is a causal connection between her protected activity, reporting discrimination related to that letter, and her termination. And last, on summary judgment, whether the district court erred in analyzing her harassment claim, and again, the harassment claim that the district court confined her to, ruling that State Farm, the defendant, according to the district court, took appropriate corrective action in response to that letter, which the district court conceded was race-based and was racial harassment. Starting with the first issue, whether the district court improperly confined this case to one single event, meaning complaining about the April 25, 2016 letter. Well, the district court looks to Dr. Carla Campbell-Jackson's charge of discrimination that she herself, as a pro se claimant, a pro se plaintiff, filled out. She's restricted. She's bound by the EEOC's own one-page form. And on that form, a form that Dr. Carla didn't create, she checked two boxes in the section of the form asking what the discrimination complaint is about. She checked one box for race. She checked the second box for retaliation. There are no boxes on this form for race-based harassment. There are no boxes on this form for race-based termination. So she did everything she could have done to express her claim on that piece of the form. The district court, in our view, is taking issue with the EEOC's form. That's not Dr. Carla's fault. Moving on to the narrative section of this form, and again, the EEOC's form, Dr. Carla, representing herself at this point, does her best to set forth a narrative of the discrimination, harassment, and race-based termination that she's complaining about. She says her in very May 9, 2016. Clearly, the only way this can be read by a reasonable person is Dr. Carla is framing her race-based claims here beginning in 2014, ending in May 2016 when she's terminated. The district court said, I read it differently. I think she's only talking about being harassed, only racial discrimination when she got the letter April 25, 2016, and then when she was terminated 13 days later, May 9, 2016. It's our position, Your Honors, that is not a reasonable interpretation of this narrative, which, again, is in plain English. Can I ask you, counsel, so even though she did include that language in the narrative portion, do you have any idea why the EEOC limited, let me make sure I'm speaking in the mic here, limited its investigation really to that April letter? Well, Your Honor, I guess the first response is it's not our position. It's not our understanding that EEOC did limit its investigation and conclusions just to that letter. If you look at the third paragraph of the EEOC's determination, and again, a determination in which the EEOC concluded that State Farm was liable for discrimination and suggested that State Farm pay approximately $500,000 to Dr. Carla in compensatory and punitive damages, they say the charging party, here, Dr. Carla, alleged she was discriminated against on the basis of her race, in parens, African American, and retaliation in violation of Title VII, being harassed, being discharged. So it's our position they looked at every element. They didn't just look at the April 25, 2016 letter. And of course, the case law says that any claims that reasonably arise, grow out of the EEOC complaint, EEOC charge, can then be pursued in a civil lawsuit. So even if, Your Honor, if that is someone's interpretation that the determination by the EEOC is only about the April 25, 2016 letter, that doesn't prevent Dr. Carla from then bringing a civil lawsuit about the other claims of discrimination that she adequately set forth in her charge of discrimination. The case law, EEOC versus McCall, Tisdale, Randolph, they all stand for the same basic and common sense principle that when reviewing an EEOC charge drafted by a pro se plaintiff, you're not to look at technicalities. You're to look at whether there's a common core of operating facts. You're to look at the totality of circumstances, whether there's an escalating progression of harassment. When you read this charge of discrimination, it is clear, again, the timeframe is 2014 to 2016, it's clear Dr. Carla Campbell Jackson, an African American who checks the box for race, who puts in the narrative she's African American, who uses the word race, she's complaining about race based discrimination, retaliation, and termination. Do you see a distinction in what was actually addressed below and what you want us to address between the dismissal portions and the summary judgment portions of this litigation? And if so, what is the remedy that you would be seeking? Yes, Your Honor. Certainly for us, the most critical ruling was the ruling on the motion to dismiss because that took the playing field from 2014 to 2016 and shrunk it to 13 days. So yes, that is the critical ruling that we believe was in error. And then, of course, now summary judgment, that's the field we're playing with is 13 days. So then when the district court said we didn't meet our burden on prima facie cases for harassment and retaliation, that's just talking about the one letter. So that was never our case from the beginning. So your position is if we believe that the claims were unfairly narrowed, then we should send the whole thing back? That's right, Your Honor. Let me ask about the, no matter which claim we're looking at, you've got to establish a base level of reasonably appropriate corrective action, right? And there's an awful lot of discussion about the corrective action from the letter. But what is, how would you state your case as to the failure of corrective action on the dismissal in light of your client's fairly stellar career? Yes, thank you, Your Honor. And I think on that issue, again, we're looking at a motion to dismiss and then secondarily a motion for summary judgment. So it's important to remember the standard the district court applied at summary judgment, and that is whether there is any question of fact, any plausible inferences. The district court said there were, there are no questions of fact, there are no plausible inferences that State Farm did not take corrective action. Well, yes, there are facts on both sides. What I think we can look at is, again, the EEOC's determination. They looked at the facts. They did a thorough years-long investigation. They write on page one of their determination twice, they concluded after weighing the facts, that State Farm did not take appropriate corrective action. They say, quote, the respondent, State Farm, failed to take prompt and appropriate action regarding this harassment. They say again, respondent, State Farm, failed to take prompt and appropriate action after it learned about the April 25, 2016 letter, thereby fostering a hostile work environment from April 25, 2016 through the day the Portage, Portage, Michigan, State Farm location closed. So again, I'm not... Do you, do you have factors that you think are very important prior to the April 25? What would you argue was evidence before that date? Thank you, Your Honor. I would say the evidence is overwhelming and astounding before that date. We set forth in our complaint that Dr. Carla Campbell Jackson, an African-American woman, had a 28-year career at State Farm, a stellar career. She was on their, the cover of their magazine more than one time. She was asked to do training videos. She was given every award you could possibly get at the highest level within State Farm. She received every accolade for a State Farm insurance industry certification. Yet, she reported a State Farm employee having a stick man with a noose around his neck at his desk, one State Farm employee having a picture of a slave plantation, a racist meme that was circulated around State Farm to 50,000 employees that we attached to our complaint. She was told that she needed to talk blacker to State Farm insureds. State Farm employees used the n-word around her, and she complained about a lot of this. There was the response from State Farm internally was, she has been a continual problem at the facility. Well, we know she was never disciplined one single time in 28 years or anything work-related. Why is she a problem? She's a problem at State Farm because she sees harassment, she sees discrimination, and she's talking about it. She's a squeaky wheel, and State Farm wanted to get rid of her, and that's what they did. And they used, of course, this one incident where she 50 attachments, PDFs, to the VP of HR. They had one social security number, and they said, gotcha, that's private information. You disseminated it, therefore you're terminated. Well, your imposing counsel would argue that there was, or they do argue in their briefing, that there was a clear violation of computer use during that. Let me just back up. It appears to me that what you're saying is that she had a really stellar career until she came to this facility. And in this new job that she was awarded based on all the things that she had done in her career, that was when she began to have the experience of mistreatment based on her complaints about discrimination. So you see those not as retaliation until you get to the April 25 letter? That is the final act of retaliation. Before that, she had reported these events. She hadn't been disciplined. There was no adverse action until she was terminated. That's correct, Your Honor. So your theory is, and your arguments are, that the record supports racial discrimination that is retaliatory from the beginning, and racial discrimination that functions in retaliation is very simply a racial discrimination claim. Is that right? If I understand you correctly, Your Honor, I think that is true. I think in summary, it's a totality of all these events, her reporting these events over time, from 2014 into 2015 into 2016, that ultimately State Farm said, enough's enough. You're a squeaky wheel. We're terminating you. So yes, it's, I guess, to quote the case law, an escalating progression of harassment. I'm confused because I thought a few minutes ago you said that the only retaliation, okay, so the only retaliatory act was her firing? Correct. Okay. But it was in retaliation for the many complaints? Correct. Okay. As far as the discrimination, you are asserting harassment, right? A hostile work environment? Yes. Okay. And that one, you are resting on the fact that her complaint included a number of allegations starting in 2014? For the harassment claim? Yeah. Yes, Your Honor. Okay. Now that claim was dismissed on summary judgment, right? Yes. Okay. But when the claim was dismissed, you had only, you were litigating everything or just beginning in, at the April 25th letter? No. In our complaint, at the motion to dismiss phase, we were litigating everything going back to 2014. The district court's ruling on motion to dismiss was everything is out, except the period between when the letter was received in April and her termination in May. Okay. The juxtaposition is a little difficult to understand. Can you give us, can you clarify exactly what the coverage of your claim would be? I guess my question is, do you need the racial discrimination claim if your retaliation claim begins in 2014 and you see the effects moving forward until finally they retaliate in the form of a discharge? Help me sort those two. Do you need the two claims or are you not addressing all of the same actions as being discriminatory and retaliatory? Help us categorize. Thank you, Honor. And I think there is overlap in these claims and discrimination, harassment, termination. I think termination is the cleanest because certainly the argument is her termination was in retaliation, not just for complaining about the April letter. It was a culmination of events for her complaining about graffiti on the bathroom wall, about disproportionately denying claims to minority policy holders, so on and so forth. And then when State Farm does this investigation before the letter was received, then Dr. Carla complains about the letter after the investigation has stopped and then they realize, okay, now we have something. Let's hang her head on that, that she sent a piece of SPI to the VP of HR and then terminate it. So yes, the termination claim is a totality of all those circumstances ending with her termination. The harassment, those claims are throughout. Each one of those instances can be a claim of harassment and discrimination, not just the retaliation and termination. Against her. Yes. Against her. Give us your best example during that time frame that you would call discrimination against her. That once she started complaining in the SIU unit that she noticed a disproportionate amount of claims being denied for minority policy holders, her reviews started plummeting. And again, a woman who had a 28-year stellar career, she was essentially the face in some respect of State Farm. And then when she started talking back and maybe uncovered illegalities, she was told enough's enough. The end is near for you. You'll have your rebuttal. Okay. Thank you. Good morning, your honors. May it please the court. I'm David Salmons representing, excuse me, my allergies are acting up. I apologize. I'm representing the Apelli State Farm Mutual Automobile Insurance Company. This court should affirm the district court's judgment for State Farm. Campbell Jackson was terminated based on her significant violations of State Farm's data security and email use policies. We are here today to affirm the policies that she was well aware of as a manager and her attacks on the district court's orders misconstrued the factual record and misstate the law. Let me start with the district court's dismissal order. The court rightly concluded that the EEOC charge exhausted only two claims, one for retaliatory discharge and one for harassment based on the April 2016 anonymous letter. Mr. Solomon, can I ask you a question on that? If we disagree with you with respect to exhaustion, in other words, we think that if we were to say that her claim was exhausted on the hostile work environment, that's the terminology that I think is helpful here, but the district court had already dismissed, what do we do about the summary judgment? The crux of my argument or my question is that because the court limited and said that you're only exhausted on harassment as to this April letter, then to the extent that Campbell Jackson is pursuing a hostile work environment, then that means that the court did not do an examination of all of the things that counsel was just telling us about that happened from 2014 to 2016. Do you agree that if we believe that she exhausted a claim for a hostile work environment over a two-year period of time, then it has to go back to the district court on the front end, make a determination as to whether or not there's enough for a hostile work environment for that period? Your Honor, I think my answer is a bit of yes and no and if you give me a moment, I'll try to explain. So what the district court said was there are two claims that are out because they weren't exhausted, right? There's the claim that she was terminated in her complaint, the claim that she was terminated because of her race, and that's clearly not exhausted in the EEOC charge because the only reference to termination in the EEOC charge states that she was, quote, discharged due to my opposition of what I believe to be unlawful employment practices, close quote, and that plainly exhausted only a retaliatory discharge claim, not one based on race. Now with regard to the harassment claim, and let me just make one other additional point there about the retaliation claim that was found to be exhausted, the court did not limit that to the events around the 2016 letter. With regard to her claim that she was retaliated for reporting activity, the court allowed evidence not just back to 2014, which was the date she gave in the charge, but their complaint goes back to 2009. The court allowed discovery and consideration of all of that. The court discussed all of that evidence in its summary judgment determination on the failure of proof at the prima facie case level with regard to causation, which we can talk about in a moment. So I think that that part of the district court's determination would be unaffected by a remand on the harassment claim if the court were to conclude that she did preserve in front of the EEOC a broader harassment claim that goes back in time beyond the 2016 letter. I don't think that that is necessarily connected with the summary judgment determination on the retaliation claim. It would require a remand with regard to harassment, and there are other issues that the district court did not get into with regard to that claim, including latches and statute of limitations. Wasn't there a denial of the latches claim? No, your honor. The court discussed it and said I don't need to reach it because I find that the claims fell on the merits and left it open. I'm looking at page eight. Accordingly, the court will deny State Farm's motion to the extent it relies upon latches. That's at the motion to dismiss order, your honor, and the court said that there might be some factual issues that need to be the very end. The court expressly talks about latches, makes a note of some of the concerns, and says the court's not going to get into it because it's decided the claims fail on the merits. And so that would remain an open issue on remand with regard to harassment. So why isn't this a Dixon versus Ashcroft case? In what sense, your honor? Because we do rely on Dixon and think that's a helpful case for us. Dixon alleged racial discrimination and also, I want to make sure I've got my notes right, and referenced retaliation in his claim. And the district court held that his claim was restricted to one, racial discrimination, and we reversed and held that his employer had notice of the possibility of retaliation would grow out of the letter and the expected scope of the investigation. Ours here works a little differently. She got the retaliation and not the hostile work environment or the discrimination. But what this case stands for since 2004 is that when an individual pleads an EEOC, a claim to the EEOC that's investigated, then you have to look at the continuity and the clarity of those claims. And we reversed on that basis. Why would that not be an appropriate remedy here? For several reasons, your honor. The first is that the court in Dixon emphasizes and has done repeatedly brazen other case. Yonis is a very important case for our position. The court has emphasized multiple times that you have to look at the narrative portion of the EEOC charge, not just the boxes that are checked. And with regard to the boxes, I would just point out she checks the box for race discrimination and for retaliation. That's perfectly consistent with the way the district court read the charge. There's a retaliation claim and a claim of harassment based on race related to the 2016 letter. That's perfectly consistent with the scope of the EEOC's investigation and its determination letter, which was limited to those two claims. So both the district court and the EEOC construed her language in the charge as reasonably supporting an investigation only into two claims, retaliation and harassment related to the April 2016 letter. This court's decision in Bray... Help me understand why. I'm looking at the very last paragraph of the charge. She has two separate paragraphs talking about beginning in September of 2014. That's the first paragraph she discusses what happened there. Then she turns to the April 25 letter and then she, in a new and separate paragraph, says, I believe I and others have been harassed because of our race, African American, and I was discharged due to my opposition to what I believe to be unlawful employment practices. Those are two different concepts. I agree they're two different concepts, your honor. So the way we read the charge, the way the district court read the charge, and with respect to my friend on the other side, the way it's clear I think the EEOC read the charge is that that reference, beginning in September of 2014, I began making complaints to human resources and my manager that our company was discriminated against minority employees and customers. That is setting up her retaliation claim because a element of a retaliation claim is reporting activity that you think violates the law. So she says I began making reporting activity in 2014 and following my complaints I received a lower evaluation. If you just looked at that, that's a retaliation claim. That's not a claim that I was harassed. I was subject to harassment in the workplace for a hostile work environment. And I don't think any cases from this court would read and support that. If you look at Jonas, for example, and this is repeated throughout this court's cases, the court draws an important distinction between the different types of Title VII claims that can be brought. Disparate treatment, hostile work environment, and retaliation. But don't they also view those in a light favorable to the individual as opposed to an attorney who files an EEOC charge? Doesn't the law require that it be considered broadly and anything that may be implicated in it must be investigated? So I'm with you for the first part and I think the second part of your question, just with respect, slightly misstates the test. So it is, yes, you read it liberally. Undoubtedly true, the district court did. But you don't read it beyond what the language could bear. And it's specifically, this court applies what's referred to as the expected investigations test, which is not just if there's any possible way to read it. It's what would one expect an EEOC investigation to be based on the language of the charge. And if you look at one case that I would really... That's a fair analysis, but I'm wondering if it begs the question here because this says beginning in September of 2014. So without question under the expected investigation, one expects the EEOC to begin and consider all of the activity beginning in 2014. For her retaliation claim, yes, and it did. Then the retaliation is not limited to you fired me. The retaliation is part of what she experienced along the way. Her declined, for the first time in her career, her declined evaluation. All of, yes, Your Honor, I didn't mean to cut you off. So you, if it went back on, if it went back to the court on the ultimate discharge, wouldn't that be then an investigation or a review of everything that had occurred since September 14? Well, it would. The only difference, though, would be it would do that for her harassment claim because that was already done for her retaliation claim. Her retaliation claim was not dismissed and she was allowed to present evidence and did present evidence going back to 2009, even though the charge says 2014. The court allowed it to go back further to give totality of the circumstances. Let's look at everything about her experience at State Farm with regard to her claim that she was terminated for retaliatory purposes. And the court considered all of that and found that she failed to satisfy her burden with regard to showing the element of causation at the prima facie case stage. And I can turn to the merits of that. What is your argument as to why, after a considerably long investigation by the EEOC, there were findings and recommendations for a significant remedy on what the EEOC analyzed and reviewed, obviously on the exhausted claims? Yes, so the EEOC's determination was based solely on the retaliation claim and the harassment claim with regard to the 2016 letter. I think that's not subject to dispute based on the language of the EEOC's determination. And the EEOC did determine that she had presented sufficient evidence and recommended a settlement amount for those two exhausted claims. Now, this court doesn't give that any weight in terms of the actual merits of her claims. The EEOC is not entitled to deference or any weight for that determination, but that is what the EEOC did. But they are the initial reviewer of the evidence, so how they consider the evidence matters and what evidence they located and participated in investigating. So, I'm still a little bit struggling. I guess what your argument would then be, the dismissal, the original dismissal on the motion to dismiss, is the definitive statement in this case, because that is what narrows to the actual termination letter for the motion for summary judgment, right? That is right. So that, again, the EEOC only investigated the claim of retaliation and the claim of harassment based on the April 2016 letter, and it made its recommendation accordingly. So it read her charge as exhausting only those two claims. That's what the district court said, and that's what we are urging this court to affirm. With regard to termination, I do not think there is any possible way of finding any language in this EEOC charge that she was terminated because of her race as opposed to being terminated for retaliatory purposes. That's expressly what she says she was terminated for and nothing else. With regard to harassment, while her retaliation claim does reference her prior reporting going back to 2014 as an element of retaliation, which is a necessary element to include, it doesn't say that she was subjected to any harassment until the discussion of the April 2016 letter. And so, and that's the difference. And I think this court's case is again... Well, just then correct me because she said, following my complaints, I received the lowest performance rating in my 28-year career. That's retaliation. That's her retaliation claim. But then it's not confined to termination. I'm sorry. Her retaliation claim was not, and it was all before the court and was all determined not to be... If you look at the district court summary judgment determination with regard to her retaliation claim, it walked through not just her termination, it also referenced her review. It also referenced the other events that took place that she says going back to 2009. And it demonstrated why there was insufficient evidence to find that any of it was caused by a retaliatory purpose. With regard to her review, for example, the court pointed out and, you know, there's a couple of places I could refer the court in the record that she was in a new... This was her first year in a new position in the Special Investigations Unit or SIU. Her own testimony in her deposition stated that she was new to the SIU and said, quote, I didn't know anything about the Special Investigative Unit when she was put into that role. That's 931 of the record. And then her reviewer, Celeste Dodson, specifically notes, and if you look at the review you will see a reference to a lack of knowledge and experience with more of the business and statistics side of the function of the SIU as being the reason for the average evaluation. It was a reference to you're on the way out. It was just an average evaluation. She calls it an average evaluation. That's what it was. And it noted areas that she needed to close the gap was what the message to her was in terms of her knowledge for this new position. And so the court considered all of that at the summary judgment stage and it determined that there was a failure of proof at the prima facie case. Let me try one more stab, if I may, on why this court should affirm on the scope of the charge. And the case I would have the court focus on is the Bray case cited in our papers. This is Bray v. Palm Beach County. And it is very much like this case where there was an exhausted claim of retaliation, but then the complaint focuses not just on retaliation, but also on disparate treatment. And the court found that the references to having made prior reporting activity for acts of discrimination did not exhaust a disparate treatment claim, only exhausted a retaliation claim. I think your time is up. We appreciate your honors. Thank you, your honors. Thank you. So in rebuttal, I will be brief. I think that one piece of our argument I wasn't able to address during my opening argument was the idea of temporal proximity as an element of causation when there's such a short period of time between the protected activity here, complaining about the April 2016 letter, and the termination. We know that in Dr. Carla's case, it was only 13 days. And the case law is abundant on this. The Mickey case found temporal proximity as causation when there's a 12-day span. The Montel case, a 13-day span. The Herrera case talked about a one-month span. O'Neill, one-and-a-half-month span. Many other cases, less than a six-month span is enough in and of itself to show causation. So it's our position here, this short period of time is enough under temporal proximity where you don't even have to get into the quote-unquote other evidence that the district court also found wasn't sufficient. And I think another fine point is on retaliation and how the district court improperly narrowed Dr. Carla Campbell-Jackson's claims is that the district court defined the protected activity as reporting the letter only. The district court did not define the protected activity as complaining about all of the other things I discussed in my opening argument, including complaining when she got to SIU that she noticed a disproportionate amount of claims being denied for minority policyholders. And I agree with your honor that the Dixon case is right on point. Where this gentleman checked the box like Dr. Carla did for race and then in the narrative section confirmed that he was black and therefore the court said that was enough, that's broad enough, we're going to consider those claims. Here we have the same set of facts. Opposing counsel said that with respect to the retaliation claim, the court considered everything beginning in 2009. Do you disagree with that? I do disagree with that because what the court said was the protected activity was only reporting the April 2016 letter. There's other protected activity, her other complaints, like I said complaints about noticing a disproportionate amount of claims being denied in SIU. Also complaining about the other racist events, graffiti on the wall, memes, so on and so forth. Those are all protected activities. Did the court address those things? The court did address those things only in the limited context of whether it made sense those would result in termination for complaining about the letter. So the court didn't consider them alone as other individual acts of retaliation only in the narrow scope of the termination connected to the letter as being retaliation. While at the same time expressing the view that those 2009 and 2014 events needed to be addressed. In other words, they were part of the claim. Correct. I'm sorry, you're saying the court acknowledged that they were part of the claim? Acknowledged that for the court's analysis on retaliation, the court was going to look at those but not independently as Dr. Carla alleged in her EEOC charge and as she alleged in her complaint. So again, now we're at summary judgment where we're playing within this narrow field. Okay. That's all I have, Your Honors. Thank you very much. We thank you both for your briefing and your argument. The case will be taken under advisement and the opinion issued in due course. The remainder of our cases are on briefs or have been rescheduled for another time. We thank you for being here today. You may adjourn.